Motion to recall mandate August 6, motion denied
November 25, 1964

## FREEMAN *v.* GLADDEN
### 396 P. 2d 779

Philip A. Levin and Carl R. Neil, Portland, for the motion.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

GOODWIN, J.

This motion to recall our mandate in *Freeman v. Gladden,* 236 Or 137, 387 P2d 360 (1963), seeks a rehearing upon constitutional questions relating to the admissibility of certain statements the petitioner gave the police after her arrest but, she alleges, before she was advised of her rights and while she was effectively denied counsel. We took jurisdiction because the petitioner was, at the time the motion was filed, under a sentence of death which followed the jury's verdict of guilty of first-degree murder without recommendation. See ORS 163.010 (3).

The first time the question of the admissibility of the petitioner's statements to the police came before this court, in the direct appeal, the question was not raised by an assignment of error. We did, however, consider an assertion in the brief to the effect that the pretrial conduct of the police officers was such as to render inadmissible, under the so-called McNabb-Mallory rule, certain signed statements. The alleged facts on this question were neither proven nor disproven. We held that, if true, the alleged errors in police procedure would not justify reversal. Our decision was based upon a number of reasons: (1) this state has not adopted the McNabb-Mallory exclusionary rule; (2) the petitioner's statements to the police had been received in evidence without objection; and (3) the petitioner had testified to substantially the same incriminating facts that appeared (with substantially the same exculpatory and irrelevant matter) in her statements to the police. See *State v. Freeman,* 232 Or 267, 374 P2d 453 (1962), cert. den. 373 US 919, 83 S Ct 1310, 10 L Ed2d 418 (1963).

The only question about the statements that was

passed upon by the trial judge was that of voluntariness. The trial judge had decided in a preliminary hearing outside the presence of the jury that the statements were voluntary. In so proceeding, the trial judge had anticipated and followed the rule which was later set forth in *Jackson v. Denno,* 378 US 368, 84 S Ct 1774, 12 L Ed2d 908 (1964), and in *State v. Brewton,* 238 Or 590, 395 P2d 874 (1964).

After the judgment of conviction was affirmed (because of our conclusion that no error had been committed in the trial), the petitioner challenged the pretrial proceedings by way of a petition for post-conviction relief under ORS 138.510 to 138.680. In the post-conviction proceedings, the trial court held that the questions presented, while presented somewhat differently than in the direct appeal, were essentially the same questions that had been ruled upon in the first case, and denied relief upon the ground that the first judgment was *res judicata.* We affirmed in *Freeman v. Gladden,* supra.

The present petition asks us to reconsider the constitutional questions that were inadequately presented in the two former cases. Reconsideration is urged primarily in light of *Escobedo v. Illinois,* 378 US 478, 84 S Ct 1758, 12 L Ed2d 977 (1964), which was decided after our mandate had gone down in *Freeman v. Gladden,* supra.

We have reviewed the transcript again. We may assume, without deciding, that if the petitioner's allegations concerning her interrogation by the police are true, and that if timely objection had been made, the trial court in the first trial would not have received the petitioner's statements in evidence.

The statements contained cumulative matter that

could have been prejudicial to the petitioner's defense. While the statements generally corroborated testimony of other witnesses who placed the petitioner at the scene of the crime before, during, and after the time the murders were committed, they also contained evidence of the petitioner's character that might have been viewed unfavorably by jurors.

We hold, however, that the statements which the petitioner gave the police were no more prejudicial to her defense than was her own testimony, which also placed her at the scene of the crime before, during, and after the time the murders were committed and which incidentally tended to disparage her character in other particulars. The conversations between the petitioner and the police covered no important matters to which she herself did not testify. See *State v. Dotson*, decided this day.

At the very worst, any statements to the police which the petitioner did not repeat on the witness stand could have been prejudicial only in the jury's consideration of the penalty. Her conversations with the police contained a somewhat less restrained description of the petitioner's role in Lesbian relationships with her codefendant and with other women than did her testimony on the stand. During her conversation with the police, the petitioner appeared to be affecting a more masculine role than she deemed expedient to affect at the trial. These matters, we assume, could have caused the petitioner to appear in an unsympathetic light in the minds of the jurors, who were to be the sole judges of the penalty to be fixed in the case. There was no issue about the existence of the Lesbian relationship, which the state contended furnished the motive for the murders. The

relationship was freely admitted. The petitioner denied, however, both in her testimony and in her statements, that she took part in the actual killing of either of the two children who were murdered.

The petitioner's participation in at least one act of premeditated murder, however, was proven beyond a reasonable doubt by evidence wholly independent of her own testimony and of the incriminating story she had told the police. Perhaps there might have been some doubt in the minds of one or more jurors about the fitness of the death penalty; the statements now complained of tended to dehumanize the petitioner and thus could have helped to resolve such a doubt against the petitioner. We shall assume, for the purposes of this case, that such a damaging effect was possible. The fact remains that none of the questioned evidence reasonably could have affected the verdict of guilty, nor the degree of murder.

After briefs in this matter were submitted, we received advice that an executive order by the Governor of the State of Oregon had commuted the petitioner's sentence to life imprisonment. The only possible prejudice the petitioner can complain of by reason of the evidence which this petition challenges would have been with reference to the penalty, and not to the question of guilt or innocence. We hold, therefore, that the matter has become moot. See *State v. Mitchell,* 239 Or 87, 396 P2d 572 (1964).

The motion is denied.